U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

DEC 15 2015

CLERK, U.S. DISTRICT COURT
By _____
Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

ANDRES REYNA MARES, JR.,            §
                                    §
            Plaintiff,              §
                                    §
VS.                                 §   NO. 4:15-CV-694-A
                                    §
WARDEN, F.C.I FORT WORTH, TEXAS,    §
ET AL.,                             §
                                    §
            Defendants.             §

### MEMORANDUM OPINION
and
ORDER

After having thoroughly considered the record in the above-captioned action, the testimonial statements given by plaintiff, Andres Reyna Mares, Jr., during a telephone/Spears[1] hearing, documents received by the court for consideration as part of the Spears hearing, and pertinent legal authorities, the court has concluded that all claims asserted by plaintiff in the above-captioned action should be dismissed pursuant to the authority of 28 U.S.C. § 1915A.

### Contents

I.   Statutory Authority for the Dismissal . . . . . . .   2
II.  History of the Litigation . . . . . . . . . . . .   3
     A.   The Western District History . . . . . . . .   3
     B.   Plaintiff's Amended Pleading in This Court . .   7
III. The Spears Hearing and Preparation for the Hearing .   8
     A.   Documents and Information Provided by the
          Government in Advance of the Spears Hearing . .   8

---

[1] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

    B.    Items Provided by Plaintiff for Consideration
          at the Hearing . . . . . . . . . . . . . . . 11
    C.    Plaintiff's <u>Spears</u> Hearing Testimony . . . . . 11
    D.    The Medical Records . . . . . . . . . . . . . 18
IV.  Analysis . . . . . . . . . . . . . . . . . . . . . 20
    A.    Plaintiff's Claims Do Not Survive the Preliminary
          Screening . . . . . . . . . . . . . . . . . . 21
          1.    The Official Capacity Claims . . . . . . . 21
          2.    The Eighth Amendment Claims . . . . . . . 26
                a.    Pleading and Proof Requirements for an
                      Eighth Amendment Claim of Failure to
                      Provide Proper Medical Care . . . . . 26
                b.    Plaintiff's Claims of Improper Medical
                      Care Were Frivolously Made . . . . . 29
                c.    Plaintiff's Complaint Fails to State
                      an Eighth Amendment Claim . . . . . . 35
          3.    Plaintiff's Retaliation Claims . . . . . . 40
                a.    Pertinent Principles . . . . . . . . 40
                b.    Plaintiff's Claims of Retaliation Were
                      Frivolously Made . . . . . . . . . . 40
                c.    Plaintiff Fails to State a Retaliation
                      Claim . . . . . . . . . . . . . . . 42
V.   Order . . . . . . . . . . . . . . . . . . . . . . . 43

I.

<u>Statutory Authority for the Dismissal</u>

As plaintiff is a prisoner seeking redress from government

officials, his complaint is subject to preliminary screening

under 28 U.S.C. § 1915A.  <u>See</u> <u>Martin v. Scott</u>, 156 F.3d 578, 579-

80 (5th Cir. 1998).  Section 1915A(b)(1) mandates <u>sua sponte</u>

dismissal if the court finds that the complaint is either

frivolous or fails to state a claim upon which relief may be

granted.

Having upon preliminary screening considered plaintiff's

pleaded claims against defendants, the court concludes that they

2

bases for those claims, were contained in the following

allegations:

> **DEFENDANT #1:**  THE WARDEN OF F.C.I. FORT WORTH MEDICAL
> FACILITY, LOCATED AT P.O. BOX 15330 FORT, TEXAS 76119.
> WHO AT THE TIME RELEVANT HERETO, WAS ASSIGNED BY B.O.P.
> AS WARDEN. FAILED TO ISSUE A MEDICAL HOLD AND TRANSFER
> THE PLAINTIFF FOR RE-EVALUATION OF HIS SHOULDER FROM
> HIS PRIOR SURGERY.

> **DEFENDANT #2:**  MR. WILLIAMSON, DIRECTOR OF MEDICAL
> DEPARTMENT AT F.C.I. FORT WORTH MEDICAL FACILITY,
> LOCATED AT P.O. BOX 15330, FORT WORTH, TEXAS. 76119,
> WHO AT THE TIME RELEVANT HERETO, WAS IN CHARGE OF THE
> F.C.I. FEDERAL MEDICAL CLINIC.  THE MEDICAL DEPARTMENT
> FAILED AND DEPRIVED HIM OF APPROPRIATE MEDICAL
> ATTENTION TO HIS SHOULDER.  PLAINTIFF CONTINUED
> SUFFERING FROM PAIN AND RECEIVED NO MEDICAL ATTENTION.
> HE NEEDS A RE-EVALUATION OF HIS PRIOR SURGERY AS
> RECOMMENDED AND ORDER BY DOCTOR BRIAN G. WEBB AT FORT
> WORTH, TEXAS HOSPITAL.

> **DEFENDANT #3:**  MS. WOODER, PHYSICAL THERAPIST AT
> F.C.I. FORT WORTH MEDICAL FACILITY, LOCATED AT P.O. BOX
> 15330, FORT WORTH, TEXAS 79119, AND WHO AT ALL TIMES
> RELEVANT HERETO WAS ASSIGNED BY THE B.O.P. AS PHYSICAL
> THERAPIST SHE DENIED PLAINTIFF THE NEEDED PHYSICAL
> THERAPY ATTENTION DESPITE MANY SICK-CALLS FOR PAIN IN
> HIS SHOULDER THAT WAS AND IS CAUSING MAJOR PROBLEMS
> THAT HE IS UNABLE TO USE HIS LEFT SHOULDER.  MS.
> WOODER, PHYSICAL THERAPIST, FAILED TO ISSUE A MEDICAL
> HOLD AND STOP THE TRANSFER FOR RE-EVALUATION OF HIS
> SHOULDER BECAUSE MS. WOODER KNEW THAT HE NEEDED THE
> **M.R.I.** OR THE **CAT-SCAN** ORDERED BY DOCTOR, DOCTOR BRIAN
> G. WEBB.

> **DEFENDANT #4:**  DOCTOR, BRIAN G. WEBB.  ORTHOPAEDIC
> SURGERY, AS A CONTRACTOR OF THE F.C.I. FORT WORTH,
> MEDICAL FACILITY. LOCATED AT UNIVERSITY OF NORTH TEXAS
> 885 MONTGOMERY ST. FORT WORTH, TX 76106 AND WHO AT THE
> TIMES RELEVANT HERE TO WAS ASSIGNED BY THE B.O.P. AS A
> DOCTOR ORTHPAEDIC SURGERY.  REINA IS IN PAIN IN HIS
> SHOULDER THAT IS CAUSING MAJOR PROBLEMS THAT HE IS
> UNABLE TO LIFT HIS LEFT SHOULDER AND UNABLE TO LIFT HIS

> LEFT ARM-UP BECAUSE DOCTOR BRIAN G. WEBB DID A MAL-
> PRACTICE SURGERY IN REYNA LEFT SHOULDER.

Doc 1. at 3-4 (errors in original).

In addition to Warden, Williamson, Wooder, and Webb, plaintiff named as defendants in his December 29, 2014 complaint the Warden of the Reeves County Detention Center where plaintiff was then incarcerated, several other persons and entities associated with the Reeves County Detention Center, and the Bureau of Prisons of Texas. Doc. 1 at 4-5. By pleadings filed in the Western District on June 24, 2015, and June 29, 2015, plaintiff added more defendants, including the Federal Bureau of Prisons and eight additional persons or entities associated with the Reeves County Detention Center. Docs. 25 at 2 & 29 at 2-4.[3] Plaintiff also added as a defendant in his June 29, 2015 filing "Medical Department at F.C.I. Fort Worth." Doc. 29 at 1, ¶ 2.

Plaintiff's complaints against the Reeves County Detention Center personnel and entities were related to problems with plaintiff's left shoulder and denial of appropriate medical attention for his high blood pressure, high cholesterol, and diabetes. Docs. 1 at 4-6 & 25 at 3, 5-6.

---

[3]Though the document filed June 29, 2015, was designated as a motion, the Magistrate Judge assigned to the action in the Western District treated it as a supplement to plaintiff's amended complaint.

On August 7, 2015, the Magistrate Judge in the Western District to whom the action had been referred for a report and recommendation, recommended the dismissal of all defendants except the FCI Fort Worth defendants (Warden, Williamson, Wooder, Webb, and Ivory[4]) Doc. 38 at 8, and recommended that the claims of plaintiff against the FCI Fort Worth defendants be construed as a separate civil rights complaint and that the separated portion of plaintiff's complaint be transferred to this court, id. The recommendation of the Magistrate Judge for dismissal included dismissal of plaintiff's claims against "Medical Department at F.C.I. Fort Worth" and "Federal Bureau of Prisons." Doc. 38 at 7-8.

By order signed September 2, 2015, the District Judge of the Western District to whom the case was assigned adopted the Magistrate Judge's report and recommendation and ordered dismissal of claims against all defendants named in the Western District action other than the claims against Warden, Williamson, Wooder, Webb, and Ivory. Doc. 40 at 3. The dismissed claims included plaintiff's claims against Medical Department of FCI Fort Worth and Federal Bureau of Prisons, which were dismissed

---

[4]The Magistrate Judge included Ivory with Warden, Williamson, Wooder, and Webb as FCI Fort Worth defendants. In the amended complaint plaintiff filed after his claims against the FCI Fort Worth defendants were docketed in this court, he did not designate Ivory as a defendant or seek any relief from Ivory. Doc. 53 at 17.

with prejudice.  <u>Id.</u>  The District Judge's order transferred the Western District case against Warden, Williamson, Wooder, Webb, and Ivory to this court.  On September 2, 2015, the District Judge signed a final judgment as to the rulings he made in the order.  Doc. 41.

B.   <u>Plaintiff's Amended Pleading in This Court</u>

After the claims against the FCI Fort Worth defendants were transferred to this court, this court issued an order on September 18, 2015, directing plaintiff to file an amended complaint against the transferred defendants to assist the court in evaluating whether there should be a dismissal pursuant to the authority of 28 U.S.C. § 1915A.  Doc. 46.  After obtaining a thirty-day extension of the deadline fixed for the filing of an amended complaint, plaintiff filed his second amended complaint on October 28, 2015, Doc. 53, in which he made allegations against Warden, <u>id.</u> at 1-5, Williamson, <u>id.</u> at 5-9, Wooder, <u>id.</u> at 9-13, and Webb, <u>id.</u> at 13-15.  Plaintiff alleged that he was suing defendants Williamson, Wooder, and Webb in both their individual and official capacities.  <u>Id.</u> at 7, 9.  He made no such allegation against Warden.

Plaintiff's claims relate to alleged failures of the defendants to provide him proper medical care for an injured left

7

shoulder.[5]  He included language suggesting that he is asserting claims against one or more of the defendants for alleged retaliation for the filing by plaintiff of inmate grievances. Doc. 53 at 3, 5, 10, 13.

The allegations against Warden, Williamson, Wooder, and Webb in the amended complaint only remotely resemble the one page of allegations that plaintiff made against them in his Western District pleadings.  Doc. 1 at 3-4.  Plaintiff's current pleading contains approximately sixteen pages of inflammatory allegations allegedly describing conduct of Warden, Wooder, Williamson, and Webb.  Doc. 53 at 1-17.  About the only thing the allegations of plaintiff's current pleading has in common with his Western District allegations against Warden, Williamson, Wooder, and Webb is that they all relate to problems plaintiff was having with his left shoulder.

### III.

### The Spears Hearing and Preparation for the Hearing

A.  **Documents and Information Provided by the Government in Advance of the *Spears* Hearing**

On November 4, 2015, the court issued an order informing plaintiff and the government that the court intended to conduct a

---

[5]The record indicates that plaintiff injured his left shoulder during an altercation on May 1, 2011, over two months before he started his confinement at FCI Fort Worth.  Doc. 68, App. at 0138, 0142.

<u>Spears</u> hearing.  The court solicited the assistance of the Bureau of Prisons in arranging for plaintiff's participation by telephone conference in the hearing, and requested FCI Fort Worth to provide by a filing in this action in advance of the hearing the following items and information:

> (1)  The beginning and ending dates of plaintiff's confinement at FCI Fort Worth;
>
> (2)  Copies of all records pertaining to plaintiff's medical complaints, care, or treatment while he was an inmate at FCI Fort Worth;
>
> (3)  Copies of all documentation pertaining to any grievance or other complaint made by plaintiff related to conduct that occurred while he was at FCI Fort Worth;
>
> (4)  The full names and present whereabouts of the persons to whom plaintiff refers in his second amended complaint as "Warden, FCI Fort Worth," "Medical Director Williamson, FCI Fort Worth," and "Ms. Wooder, Physical Therapist, FCI Fort Worth"; and
>
> (5)  The name and telephone number of a person with whom the court's staff can work in arranging the presence of plaintiff for a <u>Spears</u> hearing by telephone, taking into account that plaintiff apparently is now confined at FCI Beaumont (Medium), Beaumont, Texas.

Doc. 61 at 2.[6]

-------------------

[6]"[T]he court may require the defendants in prisoner-rights cases to construct an administrative record to assist the court in determining whether the complaint is frivolous." <u>Norton v. Dimazana</u>, 122 F.3d 286, 292 (5th Cir. 1997); <u>see also</u> <u>Wilson v. Barrientos</u>, 926 F.2d 480, 483 (5th Cir. 1991)(on rehearing)(approving an arrangement between the district court and the attorney general's office that the court would be furnished with "such medical and other prison records as were requested, for use by the complainant[s] and reviewed by the court in its 28 U.S.C. § 1915(d) determination about the viability of the complaint.").

On November 18, 2015, the government filed a response, Doc.
65, informing the court that plaintiff had been confined at FCI
Fort Worth twice, first on October 22, 1999, until August 20,
2000, and then from July 8, 2011, to December 5, 2013, id. at 1,
¶ (1)), and that plaintiff did not file a formal grievance or
administrative remedy in the BOP Administrative Remedy Program
while at FCI Fort Worth, id. at 2, ¶ (3).

The response provided the full names of the persons
plaintiff has referred to in his pleadings as "Warden, F.C.I.
Fort Worth," "Medical Director Williamson, F.C.I. Fort Worth,"
and "Ms. Woodard, Physical Therapist, F.C.I. Fort Worth."[7]

The government's response was accompanied by an appendix
that contains 594 pages of medical records pertaining to the
medical care and treatment plaintiff received while at FCI Fort
Worth from July 8, 2011, to December 5, 2013. Doc. 68, App. at
0005-0598. Also in the appendix were five pages of all items
that might be construed to be something similar to a grievance
submitted to FCI Fort Worth by plaintiff, consisting of two pages
pertaining to a request by plaintiff that he be sentenced, id. at
0600-0601, and three pages pertaining to requests by plaintiff

_____

[7]The name of the "Warden" is Rodney W. Chandler; the name of "Williamson" is Todd
Williamson; and the name of "Wooder" is Julia Woodard. Doc. 65 at 2, ¶ (4). The response noted that
Rodney Chandler became the Warden of FCI Fort Worth on November 4, 2012, and that prior to that
date the Warden was Rebecca Tamez. Doc. 61 at 2 n.1.

for his shoulder medical records, with the explanation that he needed them for court, id. at 0602-0604.[8]

B.    Items Provided by Plaintiff for Consideration at the Hearing

On December 1, 2015, a member of the court's staff received a telephone message from a person who identified herself as a Case Manager at the Beaumont, Texas, facility where plaintiff is now confined, informing the court that plaintiff wanted to be sure that the court received before the Spears hearing copies of his grievance complaints and responses to those complaints. Arrangements were made for those items to be emailed to the court on December 1.  Plaintiff was questioned about some of the items during the December 2 Spears hearing.  They are now of record as an exhibit to an order the court issued December 2, 2015.  Doc. 72.

C.    Plaintiff's Spears Hearing Testimony

The Spears hearing was conducted by telephone on December 2, 2015, with plaintiff and an Assistant United States Attorney on

---

[8]Plaintiff testified at the Spears hearing that he wanted the medical records for use in filing a lawsuit against Tarrant County, apparently to be based on a claim that it did not properly care for his left shoulder, which he had injured in an altercation that apparently led to his arrest and confinement in the Tarrant County jail. Doc. 76 at 49-50.

the line.[9]  Plaintiff was administered an oath to tell the truth.
Doc. 76 at 4.

Plaintiff agreed that his most recent confinement at FCI
Fort Worth was from July 8, 2011, to December 5, 2013.  Id. at 7.
He acknowledged that he had received copies of all of the items
the government had filed in this action in response to the
directive of the November 4, 2015 order, including the 600-plus-
page appendix; and he agreed that the items in the appendix were
genuine and accurate.  Id. at 6.

He confirmed that the only persons against whom he is making
claims in the instant action are Warden, Williamson, Wooder, and
Webb.  Id. at 10-11.  Near the end of the hearing plaintiff
testified that he is suing all the defendants in their official
capacities only and that he was not seeking to recover anything
from them as individuals.  Id. at 47-48.

The court had plaintiff give a complete description of all
conduct of each defendant about which he is complaining.  Id. at
12, 17, 23, 24.  He expressed dissatisfaction with the conduct of
each of them in respect to care and treatment of his shoulder,
but the descriptions of his complaints did not begin to match the

---

[9]The AUSA was permitted to be on the line strictly as a spectator. Doc. 76 at 1. He said nothing
during the hearing other than to acknowledge his name and that he was on the line, id. at 3, and to make
parting remarks at the end, id. at 51.

inflammatory allegations he made against those same people in his live pleading.

A summary of his complaints about Warden is that Warden was not paying enough attention to his problem with his shoulder. Id. at 16-17.  He had no problem with Ms. Tamez, the warden who was there before the Warden about whom he is complaining.  Id. at 16.[10]  He had conversations with Warden in the chow hall in early 2013, August 2013, and September 2013 about his shoulder problem, and Warden would tell him to go to sick call, and then did not do anything.  Id. at 14-15.  Plaintiff filed a complaint on November 28, 2013, and "[m]aybe because he got mad, and he throw me in the SHU."  Id. at 14-15.

Plaintiff's complaints about Williamson were similar to his complaints about Warden.  Generally, it was that plaintiff thought he needed something done for his shoulder, and he did not think Williamson paid enough attention to his shoulder problem. Id. at 19.  Williamson did not do anything; he just ignored him. Id.  Williamson did approve him for an MRI, and showed him that he had done so, but he waited for it and nothing happened.  Id. at 19-20.  His conversations with Williamson were in the chow hall, and about three or four times in Williamson's office.  Id.

---

[10]Chandler replaced Tamez as Warden in November 2012. Supra at 10 n.7.

13

at 18.  Sometimes in the mornings when he was talking to
Williamson, Williamson would take him inside the clinic and look
at the computer, check his shoulder, and say that "you're going
to have to be seen by a Dr. Webb." Id. at 17.  He expressed
concern that Williamson did not arrange for him to have an MRI or
CAT scan.  Id.

  After his surgery he started doing therapy on his left
shoulder.  Id. at 20.  He did the therapy from August 2012 until
December 2013, when he left FCI Fort Worth.  Id. at 21.  Wooder
instructed him to do therapy in a chair, and he sometimes did it
himself.  Id. at 21-22.  Wooder would tell him to do something
and then leave.  Id.  One of the other workers would help him
with his therapy.  Id.  He asked the other therapist to help him,
but was told that Wooder was the one in charge of the therapy.
Id.  The lady in charge of the therapy clinic also told him that
she could not have somebody else do his therapy because Wooder
was his therapist.  Id.  He took therapy under the supervision of
Wooder for about one and one-half years.  Id.  He was not
satisfied because she did not do the proper therapy.  Id. at 23.
Plaintiff told Wooder that she was not supposed to do his therapy
the way she was doing it.  Id.  He has described all the
complaints he has against Wooder.  Id.

His complaints against Webb are that Webb did not give him a warning before the surgery that the surgery would cause him to continue to have shoulder problems, and that Webb did not do the surgery right.  Id. at 27-28.

More generally, plaintiff testified in reference to the medical treatment he received while at FCI Fort Worth that he was given medicine for his shoulder pain, and when it did not relieve his pain they would increase the dosage and that would help.  Id. at 29-31.  He received a bottle of medicine every month, and it was enough to last through the month.  Id. at 30-31.  He was going to sick call to see medical personnel more than once a month at FCI Fort Worth after he had his surgery.  Id. at 32. Because he was in pain, he "was going back to the clinic, back and forth all the time."  Id. at 33.  They were doing what they could to relieve his pain, and they increased his medicine if he felt like he needed an increase.  Id. at 34.

Plaintiff said nothing in describing his complaints against the defendants to suggest that he has any complaint that any of them retaliated against him other than the suggestion he made that maybe Warden got mad at him and threw him in the SHU because he filed a complaint on November 28.  Supra at 13.  He arranged for the grievance papers to be emailed to the court the day before the Spears hearing so that the court could see all the

grievances.  Id. at 34-35.  He identified one of the pages in the eighty-three pages that were emailed to the court as a grievance he filed at FCI Fort Worth.  Id. at 35-36.  Plaintiff did not give a satisfactory explanation as to why that grievance paper was not included in the grievance papers he has filed from time-to-time with the papers in this action.  Id. at 36.  He says he personally handed the grievance dated November 28, 2013, to Mr. Garza.  Id. at 37.  That grievance includes all complaints he had about FCI Fort Worth.  Id.

The entire substantive contents of the only grievance plaintiff contends he submitted to FCI Fort Worth is as follows:

1.   Write your complaint in this space, as briefly as possible, including details and facts which support your request.

I been complainting to Ms. Wooder and Mr. Williamson about my left shoulder because I can not lift any thing and I had limited motion to lift any thing and I am in pain every day

2.   What action do you wish to be taken to correct the situation?

I talk to Mr Williamson in the clinic office requesting him about CAT SCAN because I have a bullet in my neck and they cant do the MRI

3.   What have you done to informally resolve this matter?  To whom have you spoken?

I talk to the warden at the chow Hall about the pain in my left shoulder and I talk to Mr Williamson at the clinic and I talk to Ms

> Wooder that I have a weak shoulder and I been
> on a lot pain.
>
> Inmate Name: <u>Andres Reyna Mares</u>   Reg No: <u>25048-177</u> Unit:
> <u>San Antonio</u> Date:   <u>11-28-13</u>

Doc. 72, Ex. at 000001 (errors in original)(emphasis added).   He did not receive a response from anyone to the November 28, 2013 grievance.   Doc. 76 at 38.

The remaining grievances in the eighty-three pages of papers he caused to be emailed to the court the day before the <u>Spears</u> hearing are grievances and responses to grievances he filed while confined at Reeves County Detention Center after his transfer from FCI Fort Worth.   Doc. 72, Ex. at 000003-000083.   In some of those grievances he made reference to medical attention he received while at FCI Fort Worth.

Plaintiff was reminded by one of the records, <u>id.</u> at 000061, that prior to his April 2012 surgery he was advised about the risks involved in the surgery, "such as continued pain, damage to adjacent structure, loss of range of motion, stiffness, arthritis," that there were "no guarantees that [he] would be able to get back to [his] pre-level of activity," and that he understood those risks and wished to proceed with the surgery, <u>id.</u>  He was somewhat evasive when asked about that entry, but he finally acknowledged that he knew when he undertook the surgery

17

that there were some risks involved that it might not solve his problems.  Doc. 76 at 44.

Also, plaintiff was reminded by the grievance papers of the rather significant facts that while he was at FCI Fort Worth Warden and Williamson had obtained authority for him to have an MRI and additional surgery for his shoulder problem.  Id. at 41, 42, 45-47.

D.   The Medical Records

The 600 pages of medical records that FCI Fort Worth made available for the Spears hearing speak for themselves.  Plaintiff received exceptional medical care while an inmate at FCI Fort Worth.  The records reflect that within ten days of his July 8, 2011 admission to FCI Fort Worth plaintiff's physical condition was extensively studied and evaluated and courses of treatment were identified.  Doc. 68, App. at 0148-0169.  Attention was given to the injury to his left shoulder, and pain medicine was prescribed.  Id. at 0148.  He was told to "Follow-up at Sick Call as Needed."  Id.  Other medical conditions were identified that could well have been in the long term as serious, if not more serious, than his shoulder injury--diabetes, hypertension, and obesity.  Id. at 0148-49, 0158.  He was given medication orders for those conditions as well.  Id. at 0155, 0169.  He was prescribed physical therapy for his shoulder condition, and he

18

was put on a low-fat, low-cholesterol, sodium-controlled, and low-triglyceride diet for his diabetes.  Id. at 0170.  In addition to being informed to follow-up at sick call as needed, plaintiff was instructed to follow-up at chronic care clinic as needed.  Id. at 0170.

The level of his medical care and treatment did not diminish after his first ten days at FCI Fort Worth.  The medical records reflect that throughout plaintiff's stay at FCI Fort Worth the medical personnel regularly gave him medication and other treatment for his various physical problems.  His rather complex shoulder surgery was performed in April 2012.  Id. at 0482-85. As time went by he developed other physical problems that were dealt with by the medical staff.  Reading glasses were prescribed at one of his diabetic eye examinations.  Id. at 0026.  He was treated for pain in his lower back caused, he thought, by a kidney problem.  Id. at 0006.  Those are only examples of the extensive medical treatment disclosed by the medical records, continuing through his transfer from FCI Fort Worth on December 5, 2013.  See id. at 0537-0551.

Performance of an MRI on plaintiff's injured shoulder was attempted in October 2013, but could not be performed because a bullet was lodged in the left side of his neck, and a CT scan was to be scheduled as an alternative.  Id. at 0549-50.  By the time

19

he was transferred on December 5, 2013, he was diagnosed as
having hyperlipidemia, mixed; hypertension, benign essential;
diabetes mellitus, type II; gross hematuria; history of urinary
calculi (persistent non-obstructive bilateral 4 on the left 3 on
the right by CT scan); low back, lumbago; and injury of shoulder
and upper arm.  Id. at 0573.  Prescriptions for medication for
care of plaintiff's medical problems appear to have been
regularly made and generous.

IV.

Analysis

The information the court acquired through the Spears
hearing process has caused the court to conclude that the bizarre
allegations made by plaintiff in his October 28, 2015 complaint
for the most part are fabrications.  Many items of properly
considered circumstantial evidence lead to that conclusion, but
an item produced by plaintiff is direct proof that tends to
eliminate any possible doubt on the subject.

Included in the grievance documents that were emailed to the
court on December 1, 2015, at plaintiff's behest is a handwritten
document that appears to be part of an appeal by plaintiff from a
ruling on a grievance complaint he had made in early 2015 against

20

the facility where he was then confined.  Doc. 72, Ex. at 000064-
000071.  In that document plaintiff wrote:

> I request centro office of B.O.P. for a transfer back
> to Fort Worth F.C.I. Medical Facility, where I could
> received the proper medical care and be re-evaluated by
> Dr Webb as soon as possible.

Doc. 72, Ex. at 000071 (grammatical and other errors in
original).  That is not the kind of request that would be made by
an inmate who had been subjected to abusive conduct of the sort
plaintiff described in his October 28, 2015 amended complaint.

Moreover, the court is satisfied that even if plaintiff's
allegations were unchallenged by information outside plaintiff's
live pleading, the allegations would not withstand a failure-to-
state-a-claim test as to any of the defendants.  Much less has
plaintiff stated an official capacity claim against United States
of America or the Tarrant County Hospital District.

A.   Plaintiff's Claims Do Not Survive Preliminary Screening

1.   The Official Capacity Claims

While Warden, Williamson, and Wooder are identified by
plaintiff in his live pleading by their official titles, thus
implying that he could be intending to sue them in their official
capacities, the only direct indication plaintiff gave in the
allegations of his current pleading of the capacity or capacities
in which he is suing Warden, Williamson, and Wooder are the

allegations that he is suing Williamson and Wooder in both their individual and official capacities. Doc. 53 at 7, 9. As noted above, during the <u>Spears</u> hearing plaintiff testified that he is suing all of the defendants in their official capacities only and that he is not seeking to recover anything from them as individuals. Doc. 76 at 47-48.

On December 9, 2015, plaintiff filed in this action a document titled "Defendant's Motion to Clarify Statement" in which he said that he intends to sue all defendants in their individual capacities as well as their official capacities, Doc. 77 at 1, and that he wants the court to accept his complaint as a <u>Bivens</u>[11] action, "as all of the Defendants are in fact employees of the United States Government and or Contract Employees," <u>id.</u> at 1-2 (errors in original).[12] Because of the inconsistent positions taken by plaintiff on the capacity issue, the court is discussing plaintiff's claims as if he is asserting them against all defendants in both their official capacities and individual capacities.

If plaintiff is suing Warden, Williamson, or Wooder in the defendant's individual capacity seeking to recover damages by

---

[11]<u>Bivens v. Six Unknown Fed. Narcotics Agents</u>, 403 U.S. 388 (1971).

[12]During the <u>Spears</u> hearing plaintiff testified that he had not sued the defendants under the <u>Bivens</u> doctrine. Doc. 76 at 47.

reason of alleged constitutional deprivation, his claims against
the defendant would be <u>Bivens</u> claims.  In <u>Correctional Services
Corporation v. Malesko</u>, the Supreme Court held that a federal
prisoner in a Bureau of Prisons facility alleging a
constitutional deprivation may not bring a <u>Bivens</u> claim against
the United States or the Bureau of Prisons, explaining:

> If a federal prisoner in a BOP facility alleges a
> constitutional deprivation, he may bring a <u>Bivens</u> claim
> against the offending individual officer, subject to
> the defense of qualified immunity.  The prisoner may
> not bring a <u>Bivens</u> claim against the officer's
> employer, the United States, or the BOP.  With respect
> to the alleged constitutional deprivation, his only
> remedy lies against the individual . . . .

534 U.S. 61, 72 (2001).

Generally, an official capacity claim against an official or
employee of a governmental agency is considered to be a claim
against the employer.  <u>See</u> <u>Kentucky v. Graham</u>, 473 U.S. 159, 166
(1985).  Thus, in the cases of Warden, Williamson, and Wooder,
official capacity claims against them would, if legally
cognizable, be claims against the Bureau of Prisons or United
States.  The Fifth Circuit has given effect to <u>Malesko</u> by its
holdings that a district court properly dismisses on the basis of
the doctrine of sovereign immunity official capacity claims
brought by a federal inmate alleging constitutional violations.
<u>See</u> <u>Gibson v. Fed. Bureau of Prisons</u>, 121 F. App'x 549, 551 (5th

Cir. 2004); see also Santos v. United States, No. 05-60237, 2006
WL 1050512, at *3 (S.D. Miss. Apr. 21, 2006).[13]

Therefore, to the extent that plaintiff's claims against
Warden, Williamson, and Wooder are official capacity claims, they
all are barred by the doctrine of sovereign immunity, and must be
dismissed.[14]

The court interprets the live pleading of plaintiff and the
medical records provided to the court as showing that Webb was
not an employee or official of the Bureau of Prisons but was
engaged in the conduct about which plaintiff complains while Webb
was associated with the Tarrant County Hospital District,
performing medical services for plaintiff pursuant to a
contractual relationship with the Bureau of Prisons. Doc. 53 at
15. The court is uncertain as to whether plaintiff's official
capacity claim against Webb is intended to be a claim against the
Bureau of Prisons and/or United States or a claim against Tarrant
County Hospital District. In either event, plaintiff's claim
fails. If he is intending to sue the Bureau of Prisons and/or

---

[13]The court recognizes that as unpublished opinions Gibson and Santos are of limited
precedential value, but the court is citing them because they are instructive as to the Fifth Circuit's
interpretation of the Supreme Court's Malesko decision.

[14]Plaintiff also is confronted as to his official capacity claims with the rulings in the Western
District before this action was transferred from the Western District to this court dismissing the claims
against Medical Department at F.C.I. Fort Worth and Federal Bureau of Prisons with prejudice. Supra at
6-7.

United States of America through that official capacity claim, the claim fails for the reasons given above.  If he is intending to sue Tarrant County Hospital District through the official capacity claim, the claim fails because there is no allegation in plaintiff's live pleading of any fact that would cause Tarrant County Hospital District to have liability for a violation by Webb of plaintiff's constitutional rights.[15]  Thus, plaintiff's claim against Webb in his official capacity must likewise be dismissed.

If plaintiff were to be held to his commitment under oath during the <u>Spears</u> hearing that he does not intend to make claims against Warden, Williamson, Wooder, and Webb in their individual capacities, the lack of merit of his official capacity claims against them would be sufficient to bring this litigation to a conclusion.  However, because of plaintiff's December 9, 2015 filing, the court is giving consideration to plaintiff's claims

---

[15]If plaintiff is complaining of Webb's conduct as an employee of Tarrant County Hospital District, the complaint would be pursuant to 42 U.S.C. § 1983.  Section 1983 does not allow a governmental entity to be held vicariously liable for the actions of its employees under a theory of respondeat superior.  42 U.S.C. § 1983; <u>Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown</u>, 520 U.S. 397, 403 (1997).  A governmental entity may be liable under § 1983 if the execution of one of its customs or policies deprives a plaintiff of a constitutional right.  <u>Monell v. Dep't of Social Servs.</u>, 436 U.S. 658, 690-691 (1978).  To hold a governmental entity liable under § 1983 thus requires the plaintiff to "initially allege that an official policy or custom was a cause in fact of the deprivation of rights inflicted."  <u>Spiller v. Texas City Police Dep't</u>, 130 F.3d 162, 167 (5th Cir. 1997)(internal quotation marks and citation omitted).  To meet that requirement, plaintiff must allege: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom."  <u>Cox v. City of Dallas</u>, 430 F.3d 734, 748 (5th Cir. 2005)(internal quotation marks and citation omitted); <u>Piotrowski v. City of Houston</u>, 237 F.3d 567, 578 (5th Cir. 2001).

as if they were being asserted against the defendants in their
individual capacities as well.

      2.    The Eighth Amendment Claims

          a.    Pleading and Proof Requirements for Eighth
                Amendment Claims of Failure to Provide Proper
                Medical Care

     Plaintiff's claims of failure of defendants to provide
proper medical care are alleged as violations of the Eighth
Amendment of the Constitution.  Deliberate indifference to a
prisoner's serious illness or injury constitutes the basis for
such a claim.  Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).  A
complaint that prison officials have been negligent in treating a
medical condition does not state a valid claim of medical
mistreatment under the Eighth Amendment.  Id. at 106.  "Medical
malpractice does not become a constitutional violation merely
because the victim is a prisoner."  Id.  "In order to state a
cognizable claim, a prisoner must allege acts or omissions
sufficiently harmful to evidence deliberate indifference to
serious medical needs."  Id.  Whether certain diagnostic
techniques or forms of treatment are indicated "is a classic
example of a matter of medical judgment."  Id. at 107.  Such a
medical decision does not represent cruel and unusual punishment.
Id.  "At most it is medical malpractice . . . ."  Id.

In <u>Farmer v. Brennan</u>, the Supreme Court explained that:

> [A] prison official cannot be held liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference can be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

511 U.S. 825, 837 (1994).  "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'"  <u>Id.</u>  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under [Supreme Court] cases be condemned as the infliction of punishment."  <u>Id.</u> at 838.  Liability cannot be imposed on prison officials solely because of the presence of objectively inhumane prison conditions.  <u>Id.</u>  "[Supreme Court] cases mandate inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment."  <u>Id.</u> (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 299 (1991).

The Fifth Circuit has been faithful to the principles announced by the Supreme Court in <u>Gamble</u> and <u>Farmer</u>.  <u>See</u>, <u>e.g.</u>, <u>Norton v. Dimazana</u>, 122 F.3d 286, 291 (5th Cir. 1997).  In <u>Norton</u>, the Fifth Circuit upheld the district court's dismissal as frivolous of the inmate's claim of deliberate indifference to

a serious medical need in violation of the Eighth Amendment, noting that the medical records provided by the prison as part of a <u>Spears</u> hearing indicated that the plaintiff was afforded extensive medical care by prison officials, who treated him at least once a month for several years, prescribed medicine, and gave him medical supplies.  <u>Id.</u> at 292.  Nor was the Fifth Circuit impressed with the inmate's allegation that medical personnel should have attempted different diagnostic measures or alternative methods of treatment, explaining that "[d]isagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."  <u>Id.</u>  The Fifth Circuit explained that:

> In order to show that his medical care violated the
> Eighth Amendment, [the inmate] must allege that prison
> officials were deliberately indifferent to his serious
> medical needs.  Deliberate indifference encompasses
> only unnecessary and wanton infliction of pain
> repugnant to the conscience of mankind.  "Subjective
> recklessness," as used in the criminal law, is the
> appropriate test for deliberate indifference.

<u>Id.</u> at 291 (citations omitted).

The Fifth Circuit thought important in reaching its <u>Norton</u> decision that the extensive evidence in the record that the prison officials afforded the inmate a great deal of care and attention demonstrated the opposite of recklessness or deliberate indifference as to the inmate's serious medical needs.  <u>Id.</u>  In

28

<u>Gobert v. Caldwell</u>, the Fifth Circuit recognized that
"[u]nsuccessful medical treatment, acts of negligence, or medical
malpractice do not constitute deliberate indifference," and that
deliberate indifference is an extremely high standard to meet.
463 F.3d 339, 346 (5th Cir. 2006).

        b.    <u>Plaintiff's Claims of Improper Medical Care Were
Frivolously Made</u>

Because plaintiff has been authorized to proceed in this
case <u>in forma pauperis</u>, Doc. 5 at 1, and is a prisoner seeking
redress by a complaint in a civil action from a governmental
entity or officer or employee of a governmental entity, he is
subject the <u>sua sponte</u> dismissal provisions of both sections
1915(e)(2)(B) and 1915A(b) of title 28 of the United States Code.
Each of those sections mandates dismissal of the action if the
complaint is frivolous.

A claim is frivolous if it "lacks an arguable basis in law
or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). The
"term 'frivolous,' when applied to a complaint, embraces not only
the inarguable legal conclusion, <u>but also the fanciful factual
allegation</u>." <u>Id.</u> (emphasis added).

When evaluating the frivolousness issue, the court is to
bear in mind that the preliminary review provisions for possible
<u>sua sponte</u> dismissal are "designed largely to discourage the

29

filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit and because of the threat of sanctions for bringing vexatious suits . . . ." <u>Id.</u> at 327.[16] To that end, <u>the statutes "accord[] judges . . . the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless.</u>" <u>Id.</u> (emphasis added); <u>see also</u> <u>Denton v. Hernandez</u>, 506 U.S. 25, 32 (1992).

With respect to a district court's evaluation as to whether facts alleged are "clearly baseless," the Supreme Court in <u>Denton</u>, in response to a request that it define the "clearly baseless" guidepost with more precision, said "we are confident that the district courts, who are all too familiar with factually frivolous claims, are in the best position to determine which cases fall into this category," and thus declined "the invitation to reduce the 'clearly baseless' inquiry to a monolithic standard." <u>Denton</u>, 506 U.S. at 33 (citation omitted).

The <u>Neitzke</u> and <u>Denton</u> decisions both dealt with a version of 28 U.S.C. § 1915 that contained in its subsection (d) an

---

[16]Section 1915A, mandating <u>sua sponte</u> dismissal for, <u>inter alia</u>, frivolousness or failure to state a claim, had, in addition, the goal of helping to bring relief to a civil justice system overburdened by frivolous prisoner lawsuits. <u>See</u> 141 Cong. Rec. S14408-01 (daily ed. Sept. 27, 1995)(Statement of Sen. Dole), 1995 WL 568915 at 17-18; 141 Cong. Rec. S14408-01 (daily ed. Sept. 27, 1995)(Statement of Sen. Hatch), 1995 WL 568915 at 33; <u>see also</u> <u>Walp v. Scott</u>, 115 F.3d 308, 309 (5th Cir. 1997).

authorization for the district court to dismiss a claim filed <u>in</u> <u>forma pauperis</u> "if satisfied that the action is frivolous." <u>Neitzke</u>, 490 U.S. at 324; <u>Denton</u>, 504 U.S. at 27.  While the current version of § 1915 in its subsection (e)(2)(B)(i) still mandates dismissal of an <u>in forma pauperis</u> complaint if it is frivolous, the court's focus here is the part of the Prisoner Litigation Reform Act codified as 28 U.S.C. § 1915A, which directs the court to review "as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" (28 U.S.C. § 1915A(a)), and, on review, to "dismiss the complaint, or any portion of the complaint, if the complaint is frivolous," 28 U.S.C. § 1915A(b).

The court has no reason to think that the Supreme Court or the Fifth Circuit would give to the "frivolous" dismissal provision of § 1915A a narrower meaning than that given to the similar dismissal provision in § 1915.  In its unpublished opinion in <u>Widner v. Aguilar</u>, 398 F. App'x 976, 978-79 (5th Cir. 2010), the Fifth Circuit equated the two.  The legislative history of § 1915A suggests that the courts could well have even broader discretion in the frivolousness evaluations in litigation filed by prisoners against the government or prison employees or officials.  <u>See</u> <u>supra</u> at 30 n.16.

31

Emphasizing the important role that a <u>Spears</u> hearing can have in the frivolousness inquiry, the Fifth Circuit gave the following explanation in <u>Wilson v. Barrientos</u>:

> We have recognized in our district courts an especially broad discretion in making the determination of whether an IFP proceeding is frivolous. Frivolousness in this context is not coterminous with failure to state a claim, but it is to be equated with the raising of a wholly insubstantial federal claim. Within the context of the <u>Spears</u> hearing the trial judge has the discretion to decide the best way to elicit the complainant's articulation of his grievance and the basis for making any credibility assessment needed.

926 F.2d 480, 482-83 (5th Cir. 1991)(citations and internal quotation marks omitted).

"The barrier to frivolous suits embraces not only the inarguable legal conclusions, <u>but also the fanciful factual allegation</u> . . . ." <u>Naranjo v. Thompson</u>, ___ F.3d ___, Nos. 13-50541, 14-50200, 2015 WL 7165475 at *4 (5th Cir. 2015)(internal quotations marks omitted)(emphasis added).  In <u>Naranjo</u>, the Fifth Circuit reminded that "[i]f the plaintiff is a prisoner, the district court must formally review the complaint immediately after it is filed and dismiss any claims it deems frivolous." <u>Id.</u> (citing 28 U.S.C. § 1915A(b)(1)).  In the instant action, this court conducted such a review as soon as practicable after this action was transferred to this court and plaintiff had filed his amended pleading.

32

The almost-600 pages of medical records the court has
reviewed in relation to the <u>Spears</u> hearing provide convincing
evidence that FCI Fort Worth and its employees and officials
provided almost-daily, and what appears to be exceptional,
medical care for plaintiff.  There is no hint that any of the
defendants had a state of mind that would suggest an intentional
disregard of plaintiff's physical and medical needs that could be
characterized as cruel and unusual punishment.  The <u>Spears</u>
hearing record allows the court to find, and the court does find,
that none of the defendants knew of and disregarded an excessive
risk to plaintiff's health and safety.

Noteworthy are the items contained in the documents emailed
to the court at the request of plaintiff on December 1, 2015,
Doc. 72, Ex. at 000001-000083.  The documents contain one page,
000001, that plaintiff claims is a grievance he submitted to FCI
Fort Worth on November 28, 2013.  Every other page in those
eighty-three pages pertains to grievances submitted by plaintiff
to the prison facility where he was confined after he left FCI
Fort Worth over a period of time spanning approximately nineteen
months (compared to the approximately thirty months he was
confined at FCI Fort Worth).  Almost every one of the Reeves
County Detention Center grievances complains of care and
treatment that facility was providing plaintiff for his left

shoulder.  Plaintiff certainly knew how to file pointed grievances if he felt that he was being mistreated, and he often did so while in the Reeves County facility.  Certainly he would have filed comparable grievances during his stay at FCI Fort Worth if he had any reason to do so.

Even the one grievance plaintiff claims to have submitted to FCI Fort Worth does not complain of anything.  Instead, it simply informs the reader of the grievance that he had discussed certain things with Wooder, Williamson, and Warden because of limitations and pain he was experiencing in his left shoulder, and of the reason why he was requesting a CAT scan instead of an MRI.  Doc. 72, Ex. at 000001.

Summed up, the record affirmatively demonstrates that none of the defendants had a state of mind of deliberate indifference to plaintiff's medical needs.  At best from plaintiff's standpoint, if the court were to give plaintiff the benefit of the doubt, he has the belief that one or more of the defendants could have exercised greater care in meeting plaintiff's medical needs.  However, even if a higher level of care was, or might have been, appropriate, failure to meet that higher level in the instant action does not remotely reach the proof needed for a finding of deliberate indifference to plaintiff's serious medical needs.

When the court considers plaintiff's request in 2015 that he be transferred back to FCI Fort Worth so he could receive proper medical care together with the other <u>Spears</u> hearing material, the only reasonable conclusion that can be reached is that the inflammatory Eighth Amendment allegations in plaintiff's complaint are fanciful allegations that have as their goal unjustly enriching plaintiff rather than obtaining recompense for violation of a constitutional right.

After having conducted the appropriate review, including a consideration of plaintiff's complaint and the material brought before the court in connection with the <u>Spears</u> hearing, the court finds that all Eighth Amendment claims asserted by plaintiff against Warden, Williamson, Wooder, and Webb are frivolous claims that are clearly baseless.  The court has concluded that there is no factual basis for any contention that any of the defendants was deliberately indifferent to a serious medical need of plaintiff.

     c.   <u>Plaintiff's Complaint Fails to State an Eighth Amendment Claim</u>

In addition to directing a district court upon its initial review to identify cognizable claims and to dismiss any the court finds to be frivolous, § 1915A directs the court to dismiss the complaint if, upon initial review, the court concludes that the

complaint fails to state a claim upon which relief may be granted.  28 U.S.C. § 1915A(b)(1).  In making the latter evaluation, the court has studied plaintiff's complaint in the context of the pleading standards established by the Supreme Court in 2007 and 2009 and the pleading and proof requirements for Eighth Amendment claims of failure to provide proper medical care, as set for above.

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of federal court pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. Twombly, 550 U.S. at 555 & n.3.  Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) ("While legal conclusions can

36

provide the framework of a complaint, they must be supported by factual allegations.").

Moreover, to prevent a dismissal for failure to state a claim, the facts pleaded must allow the court to infer that the plaintiff's right to relief is plausible. Id. To allege a plausible right to relief, the facts pleaded must suggest liability; allegations that are merely consistent with unlawful conduct are insufficient. Twombly, 550 U.S. at 557. "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

When tested by the Twombly and Iqbal standards, the allegations of plaintiff's complaint fail to allege a plausible Eighth Amendment right to relief against any defendant.

Plaintiff failed to allege any facts from which the court can infer that plaintiff's medical situation would have been any better, or his physical condition would have improved, had defendants done something different from what plaintiff alleged they did. Put another way, the pleading does not contain facts that would support a conclusion that any of the alleged conduct about which plaintiff complains adversely affected him from a medical or physical standpoint.

Moreover, no facts were pleaded that would support a plausible inference that any of the defendants knew of and disregarded an excessive risk to plaintiff's health.  No facts were alleged that would support an inference that any of the defendants became aware of facts from which the inference could be drawn that a substantial risk of serious harm to plaintiff existed if certain actions were not taken, and also drew that inference.

Nor has plaintiff pleaded any facts that would support an inference that any of the defendants engaged in any of the alleged conduct about which plaintiff complains with the intent to cause, or with the goal of causing, plaintiff not to receive the care and attention that was required for his medical needs or physical problems at the time.  Even if the unpleasant things plaintiff describes in his complaint had been said to him by one or more of the defendants, the saying of unpleasant things by prison officials to an inmate does not create the factual basis for an Eighth Amendment claim for failure to provide proper medical care.

Plaintiff may have alleged negligent conduct on the part of one or more of the defendants, such as his malpractice allegations against Webb, but none of those allegations, even if accepted as true, constitute plausible claims against any

defendant of deliberate indifference to any serious medical need of plaintiff. Even if the allegations of the complaint could be interpreted to constitute allegations that different techniques or forms of treatment might have been appropriate, there are no allegations in the complaint that any medical decision made by any of the defendants was made with ill motive or represented, or was intended as, cruel and unusual punishment within the contemplation of the Eighth Amendment.

There is yet another reason why plaintiff's pleading fails to state a claim upon which relief may be granted as to Webb. Plaintiff alleged that the surgery performed by Webb was performed on October 24, 2012. Doc. 53 at 14. Plaintiff did not initiate this action by the filing of his complaint in the Western District until December 29, 2014. Doc. 1. Under Texas law, the statute of limitations on a health care liability claim is two years. Tex. Civ. Prac. & Rem. Code § 74.251(a). As a general rule, the Fifth Circuit borrows the most analogous limitations period from state law in determining whether a claim or cause of action is barred by a statute of limitations. Frame v. City of Arlington, 657 F.3d 215, 237 (5th Cir. 2011). Thus, by not filing his suit within two years after Webb performed the surgery, plaintiff became barred by the statute of limitations to complain of that surgery or its results or of any conduct of Webb

relative to the provision of sufficient warnings to plaintiff in advance of the surgery of possible adverse outcomes or results.

    3.   <u>Plaintiff's Retaliation Claims</u>

        a.   <u>Pertinent Principles</u>

In <u>Woods v. Smith</u>, the Fifth Circuit cautioned that "[t]he prospect of endless claims of retaliation on the part of inmates would disrupt prison officials in the discharge of their most basic duties" and that "[c]laims of retaliation must therefore be regarded with skepticism . . . ." 60 F.3d 1161, 1166 (5th Cir. 1995)(quoting <u>Adams v. Rice</u>, 40 F.3d 72, 74 (5th Cir. 1994)). And, the Fifth Circuit warned that "trial courts must carefully scrutinize these claims," <u>id.</u>, adding that:

> To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident . . . would not have occurred. This places a significant burden on the inmate. . . . The inmate must . . . allege a chronology of events from which retaliation may plausibly be inferred.

<u>Id.</u> (internal quotation marks and citations omitted).

        b.   <u>Plaintiff's Claims of Retaliation Were Frivolously Made</u>

Plaintiff's allegations of retaliation are (a) that Warden retaliated against him "for having filed Inmate Grievances against the Warden and his Medical Staff for refusing to afford this Petitioner with adequate Medical Treatment," and "directly

threatened to have the Petitioner placed in the Special Housing
Unit (SHU) for filing his Constitutionally Guaranteed Right to
act on an Inmate Grievance," Doc. 53 at 3, and "for exercising
hi[s] Constitutional Right to implement the Inmate Grievance
Procedure," id. at 15, and, (b) that Wooder retaliated against
him "for exercising his Constitutionally Guaranteed Right to file
an Inmate Grievance" and "for complaining about and filing an
Inmate Grievance about Ms. Wooder snatching this Petitioner's
Left Shoulder out of its socket, and then refusing to correct the
problem, and or referring this Petitioner to a Medical Doctor,"
id. at 13.

The Spears hearing process provided reason for questioning
whether plaintiff had any basis for his pleaded retaliation
claims.  Although invited to do so, he did not mention any facts
suggesting retaliatory conduct on the part of Williamson or
Wooder.  The nearest he came to any such allegation against
Warden was to say the following:

> MR. REYNA MARES:  Yes.  Well, I've talked to
> [Warden] in different times in the kitchen.  Even
> before I got transferred, before I put in the SHU, I
> talked to him in the kitchen, and I told him about my
> problem.
>
> And then I filed some -- I filed a complaint that
> I filed in November, November 28th.  And by December, I
> was in SHU already.  Maybe because he got mad, and he
> throw me in the SHU.

Doc. 76 at 14-15.  Plaintiff's speculative testimony does not
have any support in the record.  Even if plaintiff actually did
submit to FCI Fort Worth the grievance he says he prepared on
November 28, 2013, nothing in that document could have made the
Warden mad.  The only thing it said about Warden was that "I talk
to the Warden at the chow hall about the pain in my left shoulder
. . . ."  Doc. 72, Ex. at 00001.  In fact, nothing in that
alleged grievance document says that anyone at FCI Fort Worth did
anything wrong.  Rather, plaintiff simply relates in the document
things he told to Wooder, Williamson, and Warden about
limitations on his ability to use his left upper extremity, pain
it was causing him, and a request he made for a CAT scan.  Id.
According to plaintiff, that is the only grievance he filed at
any time while at FCI Fort Worth.  Id. at 36.  Nothing about that
grievance could give rise to any of the retaliation claims of the
kind plaintiff has alleged.  His request for transfer back to FCI
Fort Worth where he could receive proper medical care is the nail
that closes the coffin on plaintiff's retaliation claims.  The
court finds that plaintiff's retaliation claims are frivolous and
clearly baseless.

     c.   <u>Plaintiff Fails to State a Retaliation Claim</u>

    Plaintiff has failed to allege in his complaint any facts
that would support an inference that any of the defendants

42

engaged in any conduct with a retaliatory motive or intent.   Nor is there any allegation that would support an inference that anything harmful happened to plaintiff because of what he alleged was retaliatory conduct.   The conclusory allegations of plaintiff relative to alleged retaliatory conduct is insufficient to satisfy plaintiff's pleading obligations.   Plaintiff has failed to allege facts that would allow the court to infer that plaintiff has a plausible right of relief against any defendant based on any alleged retaliatory conduct.

V.

Order

For the reasons given in the foregoing memorandum opinion,

The court ORDERS that all claims and causes of action asserted by plaintiff against any defendant in the above-captioned action be, and are hereby, dismissed.

SIGNED December 15, 2015.

JOHN McBRYDE
United States District Judge

43